

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Claude Isbell
Secretary of State
Austin, Texas

Attention: J. L. McGarity, Head of Charter Division

Dear Sir:    Opinion No. O-679?
             Re: Questions concerning Senate
                 Bill No. 181, Acts 49th Leg-
                 islature, relating to non-
                 profit hospital cooperatives.

        Your request for opinion on the above stated mat-
ter has been received and considered carefully by this de-
partment.

        Senate Bill No. 181 provides in part as follows:

        "Section 1.  Article 1302, Title 32, Revised
Civil Statutes of Texas, 1925, as amended, shall
hereafter be further amended by adding thereto a
new section to be known as Section 2A:

        "2A.  Charitable corporations may be creat-
ed for the purpose, or purposes, of owning and
operating non-profit cooperative hospitals, and
for the purpose of providing a suitable place in
the immediate locality where members and families
of members of such corporations may obtain medic-
al, dental, health, surgical, nursing, hospital-
ization, and related services and benefits.'

        "Sec. 2.  Corporations authorized by the pro-
visions of this Act shall not be authorized to be
created in cities or towns of more than twenty-
five hundred (2500) population, according to the
last preceding Federal Census.'

        Your first two questions are:

        1.  "What per cent of membership fees can be
used to pay a solicitor of members?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Claude Isbell, page 2

2. "Must the solicitor of members be grant-
ed a license or permit from the Securities Com-
missioner of Texas?"

The answers to these questions depend upon the ap-
plicability of the Securities Act (Article 600a, V.A.C.S.)
to the sale of memberships in such an organization as the
hospital cooperatives provided for by Senate Bill No. 181.
Section 2 (a) of the Securities Act defines "security" as
follows:

"The term 'security' or 'securities' shall
include any share, stock, treasury stock, stock
certificate under a voting trust agreement, col-
lateral trust certificate, equipment trust cer-
tificate, preorganization certificate or receipt,
subscription or reorganization certificate, note,
bond, debenture, mortgage certificate or other
evidence of indebtedness, any form of commercial
paper, certificate in or under a profit sharing
or participation agreement, certificate or any
instrument representing any interest in or under
an oil, gas or mining lease, fee or title, or any
certificate or instrument representing or secured
by an interest in any or all of the capital,
property, assets, profits or earnings of any com-
pany, investment contract, or any other instru-
ment commonly known as a security, whether simil-
ar to those herein referred to or not." (Emphasis ours)

A membership in a hospital cooperative certainly
would be a "certificate . . . representing . . . an interest
in any or all of the . . . assets" of such cooperative, and
the sale of such membership would be within the purview of
the Act unless exempt by the provisions of Section 3. Sub-
division (a) of Section 3 of the Securities Act is as follows:

"Any security or membership issued by a cor-
poration organized exclusively for educational,
benevolent, fraternal, charitable, or reformatory
purposes and not for pecuniary profit, and no part
of the net earnings of which inures to the benefit
of any stockholder, shareholder, or individual
member, and where no commission or remuneration is
paid or given or is to be paid or given in connec-
tion with the disposition thereof."

Honorable Claude Isbell, page 3


Is a hospital cooperative contemplated by Senate Bill No. 181 a charitable corporation? We think not, despite the facts that this Bill denominates it such. A charitable corporation has been variously defined in these terms:

A voluntary association organized to provide for monthly payments, medical, surgical and hospital care for members who were employees of a railway company, and maintaining several hospitals, was not operated exclusively for "charitable" purposes, so as to be exempt from social security taxation, notwithstanding that railway company made appreciable gifts to association each year, and that some charity cases were taken care of, and association had no net earnings. Smith v. Reynolds, 43 F. Supp. 510, 514.

"Charitable" in statute exempting charitable corporations from the payment of unemployment compensation tax is limited to organizations maintained exclusively for eleemosynary purposes. Lexington Cemetery Co. v. Commonwealth, (Ky.) 181 S.W. (2d) 699, 702.

The term "charity" always connotes the public generally, or the public at large, or at least an indefinite section of it, as distinguished from a definite section thereof, and a "charitable use" is one that exists for persons uncertain, as the public at large, or some general section of it, such as the poor or the needy. In re Altman's Estate, (148) N.Y.S. 601, 87 Misc. 255.

Therefore, it is the opinion of this department that the sale of memberships in the hospital cooperatives contemplated by Senate Bill No. 181 is subject to the provisions of the Securities Act. Section 7 of the said Securities Act provides:

"In the event any dealer as defined herein shall sell or offer for sale any preorganization certificate or receipts, or shall in any manner solicit subscriptions to or in any proposed corporation, trust or joint stock company proposed

817

to be formed, the Secretary of State may require, if he deems it necessary to protect the interests of prospective subscribers or certificate holders, the dealer so offering such securities for sale to deposit all moneys and funds received from the sale thereof, except such amounts thereof as the Secretary of State may have under this Act allowed as preorganisation expenses and commissions for the sale of such security, to be deposited in a trust account in some bank or trust company doing business in the State of Texas, until such time as such proposed company shall have sold the minimum amount of capital to authorise it to begin business in Texas, at which time the bank or trust company shall transfer such funds to the proposed corporation and its executive officers for the purpose of permitting it to undertake its business. In the event such proposed company as herein defined shall fail within two (2) years to sell the minimum amount of capital necessary for the beginning of business in Texas, the bank or trust company shall return to the subscribers that portion of the funds that had been deposited under such preorganization agreement. At the time of making the deposits, as herein provided for, the dealer or issuer shall furnish to such bank or trust company the names of the persons purchasing or subscribing for such securities, and the amount of money paid in by each.

"The total expenses, including organization expenses and all commissions paid to salesmen of any proposed company, as herein defined, shall not exceed twenty (20) per cent of the total amount of capital sought to be employed in such proposed company." (Emphasis ours)

The organization expenses, including all commissions paid to salesmen, of the cooperatives, must not exceed 20 per cent of the total amount of capital sought to be employed in such proposed company.

In answer to your second question, it is the opinion of this department that the solicitor of members must have a license or permit from the Securities Commissioner of Texas.

Your third, fourth and fifth questions are as follows:

3. "If the act does not become effective until 90 days after adjournment, can the charter be prepared now and placed on file with you and there held pending the said effective date of the act?"

4. "Can the solicitation of members begin now, prior to the effective date of the act, and the funds compounded to be returned if the charter is rejected?"

5. "Can the proposed members now enter into the purchase of a proposed site?"

The effective date of Senate Bill No. 181 being September 4, 1945, these questions are moot and we deem it unnecessary to answer same.

Your sixth question is:

6. "What will the filing fee be for each such charter or an amendment thereto?"

Article 3914 provides in part as follows:

"The Secretary of State is authorized and required to charge for the use of the State the following other fees:

". . . .

"Upon filing each charter, amendment or supplement thereto, of a private corporation created for any other purpose intended for mutual profit or benefit, a filing fee of Fifty ($50.00) Dollars,

Honorable Claude Isbell, page 6

provided that if the authorised capital stock of said corporation shall exceed Ten Thousand ($10,-000.00) Dollars it shall be required to pay an additional fee of Ten ($10.00) Dollars for each additional Ten Thousand ($10,000.00) Dollars of its authorised capital stock or fractional part thereof after the first." (Emphasis ours)

In answer to your question No. 6, you are advised that a filing fee of not less than fifty dollars is required upon the filing of such charters, amendments, or supplements thereto, of the hospital cooperatives provided for in Senate Bill No. 181.

Your seventh question is:

7. "May a group of citizens living inside the corporate limits of a town with a population in excess of 2,500 organize and operate such a corporation if the hospital is located outside the corporate limits of such city or town?"

The obvious intent of Senate Bill No. 181 is to permit the owning and operation of hospital cooperatives in smaller communities where such services are not now available. The wording of Section 2, however, is obscure. It provides that such corporations "shall not be authorized to be created in cities or towns of more than twenty-five hundred (2500) population." This language can mean only that such corporations shall not establish and maintain hospital cooperatives in cities or towns of more than 2500 population. There is nothing in the Act which would prohibit persons who are residents of larger towns from organizing, or being members of, a cooperative to be established and maintained outside of such town, as long as such cooperative hospital is located in the immediate locality where the members reside.

Your eighth question is:

8. "Should the requirements with respect to population appear on the face of the charter or by an affidavit attached thereto?"

Article 1304 provides as follows:

Honorable Claude Isbell, page 7

"A charter must be prepared setting forth:

"1.  The name of the corporation;

"2.  The purpose for which it is formed;

"3.  The place or places where its business is to be transacted;

"4.  The term for which it is to exist;

"5.  The number of directors or trustees, and the names and residences of those who are appointees for the first year;

"6.  The amount of its capital stock, if any, and the number of shares into which it is divided."

Article 1309 contains these provisions:

"If the Secretary of State is not satisfied, he may, at the expense of the incorporators, require other satisfactory evidence before he shall be required to receive, file and record such charter."

You are advised, therefore, that there need be nothing on the face of the charter of such a corporation regarding the population of the city or town in or near which such cooperative is to be established. However, the Secretary of State may require evidence that the provisions of the Act authorizing the creation of such corporations have been met.  It is the opinion of this department that when the face of the charter fails to show the population of the city or town in which the cooperative hospital is to be located, you will be justified in requiring evidence satisfactory to you of such fact.

Your ninth question is:

9.  "May the charter of such a corporation provide for the issuance of capital stock?"

Article $1302$ as amended by the provisions of Senate Bill No. 181 does not prohibit the issuance of capital stock by a corporation created for the purpose of owning and operating

Honorable Claude Isbell, page 8

a non-profit cooperative hospital. In the absence of a prohibition, we know of no reason why such corporation cannot provide for the issuance of capital stock.

Your tenth question is:

10. "If the corporation is organized without capital stock, should the charter make a provision as to the source of the working capital of the corporation and as to its right to own property and equipment?"

In view of Article $1304$ and Article $1302$ as amended by Senate Bill No. 181, if a corporation for the purpose of owning and operating a cooperative hospital is organized without capital stock, the charter need not make any provision regarding the source of the working capital and its right to own property and equipment.

Your eleventh question is:

11. "Will such a corporation have to pay a franchise tax and if it does how will such tax be computed?"

Subsection (a) of Article $7084$ provides:

"Except as herein provided, every domestic and foreign corporation heretofore or hereafter chartered or authorized to do business in Texas, or doing business in Texas, shall, on or before May 1st of each year, pay in advance to the Secretary of State a franchise tax for the year following, based upon that proportion of the outstanding capital stock, surplus and undivided profits, plus the amount of outstanding bonds, notes and debentures, (outstanding bonds, notes and debentures shall include all written evidences of indebtedness which bear a maturity date of one (1) year or more from date of issue, and all such instruments which bear a maturity date of less than one (1) year from date of issue but which represent indebtedness which has remained outstanding for a period of one (1) year or more from date of inception, but which have been renewed or extended, or

852

refinanced by the issuance of other evidences of
the indebtedness, whether to the same or other
parties and it is further provided that this term
shall not include instruments which have previous-
ly been classified as surplus) as the gross re-
ceipts from its business done in Texas bears to the
total gross receipts of the corporation from its
entire business, which tax shall be computed on
the basis of One Dollar ($1) per One Thousand Dol-
lars ($1,000) or fractional part thereof; provided,
that such tax shall not be less than Twenty Dollars
($20) in the case of any corporation, including those
without capital stock, and there provided further
that the tax shall in no case be computed on a sum
less than the assessed value, for State ad valorem
tax purposes, of the property owned by the corpora-
tion in this State. Where a foreign corporation
—applying for a permit has theretofore done no
business in Texas, such tax shall not be payable
until the end of one (1) year from the date of such
permit, at which time the tax shall be computed
according to first year's business; and, at the
same time, such corporation shall also pay its tax
in advance, based upon the first year's business,
for the period from the end of the first year to
and including May 1st following. In all other
cases, the tax shall be computed from the data
contained in the reports required by Articles 7087
and 7089. Capital stock as applied to corpora-
tions without capital stock shall mean the net
assets."

The corporations which are exempt from the payment
of a franchise tax are enumerated in Article 7094, which pro-
vides as follows:

"The franchise tax imposed by this chapter
shall not apply to any insurance company, surety,
guaranty or fidelity company, or any transportation
company, or any sleeping, palace car and dining car
company which is now required to pay an annual tax
measured by their gross receipts, or to corpora-
tions having no capital stock and organized for the
exclusive purpose of promoting the public interest

853

of any city or town, or to corporations organized for the purpose of religious worship, or for providing places of burial not for private profit, or corporations organized for the purpose of holding agricultural fairs and encouraging agricultural pursuits, or for strictly educational purposes, or <u>for purely public charity</u>." (Emphasis ours)

As indicated in our answers to your first two questions, the corporations provided for in Senate Bill No. 181 are not organized for "purely public charity," and therefore they are not within the exemption provided for in Article 7094. It is the opinion of this department that such corporation, whether it issued capital stock or not, must pay a franchise tax computed as provided for in Article 7084.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Arthur L. Moller*
Arthur L. Moller
Assistant

ALM:db

APPROVED SEP 24, 1945

FIRST ASSISTANT
ATTORNEY GENERAL

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN